UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ROBIN LYNN PADILLA, | No. ED CV 14-1843-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 9, 2014, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on October 8, 2014, and October 22, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 27, 2015, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 12, 1963. [Administrative Record ("AR") at 38, 149.] She has past relevant work experience as an order filler, inventory control clerk, and production machine tender. [AR at 28, 56-57, 265.]

On October 5, 2011, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since March 13, 2009. [AR at 18, 149-51.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 18, 108.] A hearing was held on April 10, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 36-64.] A vocational expert ("VE") also testified. [AR at 55-63.] On May 9, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from March 13, 2009, through May 9, 2013, the date of the decision. [AR at 18-30.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 13.] When the Appeals Council denied plaintiff's request for review on July 14, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 13, 2009, the alleged onset date.[1] [AR at 20.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [L]umbosacral sprain; disc protrusions in the lumbar spine; hyperlipidemia; right knee sprain; obesity; bipolar disorder; panic disorder with agoraphobia; anxiety disorder; and mood disorder.

[Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [Id.] The

---

[1]  The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. [AR at 20.]

4

ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] as follows:

> [S]he can occasionally climb ramps and stairs; she can never climb ladders, ropes, and scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl; she can occasionally push or pull with the upper and lower extremities; she must avoid working around unprotected heights and unprotected heavy machinery; she requires the occasional use of a cane for ambulation when walking away from the workstation; she can understand, remember, and carryout [sic] simple job instructions; she can maintain attention and concentration to perform simple, routine, and repetitive tasks; she can occasionally interact with coworkers, supervisors, and the general public; and she can work in an environment with occasional changes in the work setting and occasional work-related decision making.

[AR at 22.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as an order filler, inventory control clerk, or production machine operator. [AR at 28, 56-58.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "packer" (Dictionary of Occupational Titles ("DOT") No. 920.687-166), "small product assembler" (DOT No. 706.684-022), and "sorter or grader" (DOT No. 529.687-186). [AR at 29, 57-60.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of March 13, 2009, through May 9, 2013, the date of the decision. [AR at 30.]

/

/

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he rejected the opinion of Khushro Unwalla, M.D., an examining psychiatrist. [Joint Stipulation ("JS") at 4.]

As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A.  LEGAL STANDARD RELATING TO MEDICAL OPINIONS

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

6

B.  **DR. UNWALLA**

Dr. Unwalla conducted a consultative examination of plaintiff on February 20, 2012. [AR at 311-14.] In his report, Dr. Unwalla indicated that plaintiff complained of "getting mad and angry at everything," getting frustrated, and experiencing symptoms consistent with panic attacks, anxiety, and paranoia; and plaintiff reported that she "has been staying at home, refusing to leave her room," has "not been able to access insurance" and has not been able to see a psychiatrist or take psychiatric medication, can handle the family funds and pay the bills, does not rely on family for transportation, and has "adequate self-care skills of bathing, dressing, eating, toileting, and safety precautions." [AR at 311-12.] A mental status examination showed that plaintiff was tearful and depressed; was animated with some psychomotor agitation, yet her psychomotor activity was within normal limits; was cooperative; was able to establish rapport with Dr. Unwalla; had loud and pressured speech; had a cheerful, depressed, irritable and frustrated mood; had an affect that was reactive and congruent with her mood; had racing thoughts and several thoughts at the same time; was upset because she got into fights with people "all the time" due to her paranoia and persecutory delusions; was alert and oriented to person, place, and time; was unable to do serial sevens and serial threes; was able to analyze the meaning of simple proverbs; and responded appropriately to imaginary situations requiring social judgment and knowledge of the norms. [AR at 312-13.] Dr. Unwalla diagnosed bipolar disorder, not otherwise specified, and panic disorder with agoraphobia, and assigned a Global Assessment of Functioning ("GAF")[4] score of 56.[5] [AR at 313.] Dr. Unwalla found that plaintiff exhibited moderate difficulty interacting with him and the clinic staff, maintaining composure, maintaining an even temperament, maintaining social functioning, focusing and maintaining attention, and in concentration,

---

[4] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV"). The most recent edition of the DSM "dropped" the GAF scale, citing its "conceptual lack of clarity" and "questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

[5] A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). DSM-IV 34.

persistence, and pace. [AR at 314.] Dr. Unwalla opined that plaintiff would have mild limitations performing simple and repetitive tasks; moderate limitations performing detailed and complex tasks; and moderate difficulties in performing work activities on a consistent basis without special or additional supervision, completing a normal workday or work week, accepting instructions from supervisors and interacting with coworkers and the public, and handling the usual stresses, changes, and demands of gainful employment. [Id.] Dr. Unwalla stated that plaintiff would "definitely benefit from psychiatric and psychological evaluation and treatment." [Id.]

The ALJ gave "significant weight" to the opinions of the psychiatric consultative examiners -- Dr. Unwalla and Ana Maria Andia, M.D.[6] -- and the State Agency medical consultants:

> These opinions found [plaintiff] had no more than moderate mental limitations and was able to perform a range of unskilled work. These opinions are all reasonable and supported by the record as a whole. In particular, these opinions are consistent with the absence of significant positive findings in the record. In addition, these opinions are supported by the benign findings from the mental status examinations showing that [plaintiff] had normal grooming, eye contact, motor activity, thought content, alertness, memory, and concentration. No single assessment has been completely adopted as the residual functional capacity determined herein. The undersigned has adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole.

[AR at 27 (citation omitted); see also AR at 65-81, 83-98, 311-14, 326-32.]

Plaintiff argues that the ALJ "impermissibly rejected" Dr. Unwalla's opinion with respect to her moderate limitations in the ability to perform work activities on a consistent basis without special or additional supervision, and to complete a normal workday or work week. [JS at 4-11, 18-19.] The Commissioner contends that the RFC "adequately address[es] the psychiatric limitations established in the record," and the ALJ "did not articulate any reasons for rejecting Dr. Unwalla's findings for the simple reason that he did not actually reject those findings." [JS at 13, 16-17.]

---

[6] Dr. Andia examined plaintiff on November 7, 2012, shortly after plaintiff started taking Sertraline, prescribed by her primary care physician two weeks prior. [AR at 326-27.] Dr. Andia diagnosed plaintiff with mood disorder secondary to general medical condition, depressed, and panic disorder without agoraphobia, and assigned a GAF score of 60. [AR at 331.] She opined that plaintiff was mildly limited in her ability to do detailed and complex instructions, and maintain concentration and attention, persistence, and pace; and moderately limited in her ability to maintain regular attendance in the work place and perform work activities on a consistent basis. [AR at 332.]

An ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). In addition, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

Here, despite the ALJ's assertion that he afforded Dr. Unwalla's opinion significant weight [AR at 27], the ALJ failed to explain why he apparently rejected and did not include in the RFC determination Dr. Unwalla's moderate limitations in the ability to perform work activities on a consistent basis without special or additional supervision, and to complete a normal workday or

work week due to her mental condition. See 20 C.F.R. § 404.1527(f)(2); Soc. Sec. Ruling ("SSR")[7] 96-8p, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); see Marsh v. Colvin, __ F.3d __, 2015 WL 3773004 (9th Cir. June 18, 2015) (ALJ's failure to mention the treating doctor's notes and opinions was not harmless error). The ALJ stated that he adopted only the restrictions that were "best supported by the objective evidence as a whole" [AR at 27], but did not elaborate further. Given that Dr. Andia also found that plaintiff was moderately limited in her ability to maintain regular attendance and perform work activities on a consistent basis [AR at 332], and the State Agency medical consultants also found that plaintiff was moderately limited in her ability to sustain an ordinary routine without special supervision and to complete a normal workday and workweek without interruptions from psychologically-based symptoms [AR at 77-78, 95-96],[8] there appears to be objective evidence in the record to support Dr. Unwalla's opinion.

Accordingly, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Unwalla's opinion regarding plaintiff's moderate limitations in her ability to perform work activities on a consistent basis without special or additional supervision, and complete a normal workday and workweek without interruption from psychologically-based symptoms. Remand is warranted for the ALJ to reassess the opinion of Dr. Unwalla.

---

[7] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan, 246 F.3d at 1202 n.1 (internal citations omitted).

[8] The Commissioner argues that because the State Agency medical consultants also found that plaintiff could carry out simple repetitive tasks, the RFC "is consistent with the concrete restrictions identified in the medical evidence." [JS at 17 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008)).] However, unlike the State Agency medical consultants, Dr. Unwalla did not find plaintiff capable of carrying out simple repetitive tasks. [AR at 314.] Therefore, the Court cannot find that the RFC is consistent with the "concrete restrictions" in the record. See Stubbs-Danielson, 539 F.3d at 1174 (holding that "moderate" mental limitations are not necessarily inconsistent with an RFC for "simple" tasks, as long as such an assessment is generally consistent with the "concrete" restrictions identified in the medical evidence).

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1041 (9th Cir. 2007); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See <u>Benecke</u>, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Unwalla, the ALJ on remand shall reassess Dr. Unwalla's opinion. In reassessing the medical opinion evidence, the ALJ must explain the weight afforded to Dr. Unwalla's opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including, if warranted, a legally sufficient explanation for crediting one doctor's opinion over the other. Second, the ALJ shall reassess plaintiff's RFC. Finally, the ALJ shall determine at step five, with the assistance of a VE if necessary, whether there are other jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.[9]

/
/
/
/

---

[9] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 22, 2015

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE